## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL R. FANNING, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO. CIV-11-0599-HE |
| | ) | |
| CHRIS NAPIER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs are fiduciaries of several employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), namely the Oklahoma Operating Engineers Welfare Plan (the "Welfare Plan"), the International Union of Operating Engineers Local 627 Training Trust (the "Training Trust"), and the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "Pension Fund"). Plaintiffs sued defendant All Steel Construction, Inc., ("All Steel") to collect delinquent contributions allegedly owed them under the terms of a collective bargaining agreement ("CBA"). Both defendant and plaintiffs moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the nonmoving parties, and concludes that plaintiffs' motion should be granted in part and denied in part, and defendant's motion should be denied.

### Background

On June 1, 2008, the Operating Engineers, Hoisting & Portable Local Union #627 (the

"Union") entered into a CBA with the Oklahoma Commercial and Industrial Builders and Steel Erectors Association, effective from June 1, 2008 to May 31, 2011.  Defendant is an employer that signed an Addendum binding itself to this CBA.  Plaintiffs claim defendant owes them payments for delinquent contributions required by the terms of the CBA.

In December 2010, an audit was performed on behalf of the Welfare and Pension funds of defendant's wage and payroll records for the time period from September 2008, to November 2010.  The audit identified a deficiency of $40,280.76 in contributions, $6,373.23 in interest, and $4,332.51 in liquidated damages [Doc. #97 at 13].  Most of the alleged deficiencies relate to one of defendant's employees–Robert Bunch–who worked as a crane operator during at least part of the time of the effective coverage of the CBA.  Defendant alleges that Bunch, who was apparently not a member of the union at the time, was hired pursuant to an oral agreement with the Union in 2007 that he would not be subject to the CBA after the Union was unable to provide defendant with an operator.

Defendant submitted monthly remittance reports to plaintiffs.  It asserts that some of these reports indicated that Robert Bunch was "non-union" and not entitled to receive contributions.  Plaintiffs contend that some of the documents referred to by defendant were never submitted to them.  An audit was also conducted on plaintiffs' behalf in September of 2008 for the period of January 2007, to August 2008, which includes a period of time covered by the CBA involved here.  Plaintiffs contend that Robert Bunch was not identified in the 2008 audit because of representations by one of defendant's employees as well as alterations to defendant's records relating to Robert Bunch [Doc. #100 at 14].

Plaintiffs brought this suit pursuant to ERISA § 515 [29 U.S.C. § 1145] and § 502 [29 U.S.C. § 1132].  It seeks to collect a deficiency in fringe benefit contributions allegedly owed by defendant, on behalf of several of its employees, as identified in the 2010 audit.  Plaintiffs seek $40,280.76 in contributions, as well as interest, liquidated damages, and attorneys fees as provided in 29 U.S.C. § 1132(g)(2).

<u>Discussion</u>

Plaintiffs seek summary judgment as to their claims and as to defendant's counterclaims.  However, plaintiffs did not specifically address defendant's counterclaims in their motion.  Therefore, plaintiffs' request for summary judgment will be denied as to the counterclaims.

ERISA § 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  ERISA's civil enforcement provision allows plan fiduciaries to sue to enforce provisions of ERISA.  29 U.S.C. § 1132(a)(3).  Here, plaintiffs allege that the terms of the CBA between defendant and the Union provide for contributions to the plaintiffs on behalf of all of the employees identified in the 2010 audit, and plaintiffs seek delinquency contributions as to them.

<u>(1) Claims for Contributions on behalf of Union Members</u>

Defendant does not contest its liability for contributions owed as to the union

members identified in the 2010 audit.  Plaintiffs are therefore entitled to summary judgment as to liability for such contributions.  However, summary judgment will be denied as to whether the amounts owed have been paid.  A factual dispute exists as to whether the $62,970.89 paid by defendant to plaintiffs was in satisfaction of the amounts at issue here or for some other period.

<u>(2) Claims for Contributions on behalf of Non-Union Member</u>

Defendant's primary contention is that it did not owe any contributions on behalf of Robert Bunch, a non-union employee.  Defendant argues: (1) Bunch, as a non-union employee, was not covered by the terms of the CBA; (2) an oral modification of the CBA took place in 2007 which took Bunch out of the scope of its coverage; and (3) that defendant is not liable to plaintiffs based on the equitable doctrines of waiver, estoppel, and laches.

As to the first matter, the court concludes the CBA covers both union and non-union employees who perform work falling within the craft jurisdiction as defined in the agreement.  The interpretation of a collective bargaining agreement is based on general contract interpretation principles.  *See* <u>Trs. of Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co., Inc.</u>, 134 F.3d 383 at *3-4 (10th Cir. 1998) (unpublished opinion) (noting that in determining whether a CBA is ambiguous "the ultimate inquiry is whether 'from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings'" (citation omitted)).

The parties do not contend that the CBA is ambiguous, nor is it ambiguous on its face. *See* <u>Trs. of Colo. Statewide Iron Workers (ERECTOR) Joint Apprenticeship & Training</u>

Trust Fund v. A & P Steel, Inc., 812 F.2d 1518, 1530 (10th Cir. 1987).  Instead, the parties

point to different sections of the agreement which they contend support their respective

claims.

The agreement states that it applies to "all Operating Engineers craft work performed

by the Employers," without distinguishing between union and non-union employees [Doc.

#97-1 at 1, ¶ B].  The CBA then defines its craft jurisdiction to include "Operation and

maintenance of all hoisting and portable engines on building construction work . . . including

. . . cranes" [Doc. #97-1 at 4, Art. III].   The CBA sets out "Operating Engineer

Classifications," which includes operators of "All Crane Type Equipment" [Doc. #97-1 at

16-17, Art. XVI]. The fringe benefit provisions of the CBA require defendant to pay certain

enumerated amounts to the Welfare Plan, Pension Fund, and Training Trust for "employees

covered by this Agreement" [Doc. #97-1 at 14-15, Art. XV, ¶¶ A, B, D].  Significantly, none

of these provisions distinguish between union and non-union employees.   Rather, the

agreement requires contributions based solely on the type of covered work listed.  It is

undisputed that Robert Bunch was employed as an Operating Engineer of a crane performing

work falling within the CBA's craft jurisdiction definition.

Other provisions support the conclusion that Bunch was covered.  The CBA contains

a clause recognizing the Union as the "exclusive Collective Bargaining Agent for *all*

*Employees* performing Operating Engineer classifications as contained in the craft

jurisdiction and Wage Classifications section of this Agreement" [Doc. #97-1 at 2, Art. I, ¶

A (emphasis added)].  The Tenth Circuit concluded that a similar recognition clause "clearly

5

establishes the union as the bargaining representative for all employees performing work covered by the agreement." Manning v. Wiscombe, 498 F.2d 1311, 1313 (10th Cir. 1974). It found that the nonunion employees involved there were performing types of work that were covered, and therefore the employer was obliged to make contributions on behalf of his nonunion employees as well. *Id*.; *see also* Trs. of S. Cal. IBEW-NECA Pension Trust Fund v. Flores, 519 F.3d 1045, 1047 (9th Cir. 2008).

The provisions of the agreement that defendant relies on do not support a different conclusion. All Steel contends that the union shop clause indicates that only union members are covered. The clause states:

> All employees who are members of the Union on the effective date of this Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement. New employees shall be required to become and remain members of the Union as a condition of employment . . . in accordance with applicable legal requirements as permitted by Oklahoma law.

[Doc. #97-1 at 2, Art. II, ¶ B]. *Kohn Beverage* rejected a similar argument, noting that "union shop clauses have been construed to require only payment of union dues and not union membership." Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318 (6th Cir. 1984). The court reasoned that interpreting the term "employee" to mean union member would render the clause meaningless, and emphasized that the language instead indicated that "'employees covered by this agreement' may exist prior to and apart from union-member employees." *Id*. at 318-19. The presence of the union shop clause does not establish that, for the purposes involved here, only union members are

covered by the CBA.

Defendant also relies on a provision that reads: "The Employer shall employ all Operating Engineers and Apprentices through the Union office" [Doc. #97-1 at 3, Art. II, ¶ C]. Defendant contends that the Union was unable to supply it with a crane operator at the time, so the Union and defendant entered into an oral agreement allowing defendant to hire Robert Bunch outside of the Agreement. It argues that, as the Union did not supply Robert Bunch, he was not covered by the agreement. However, the Ninth Circuit rejected a similar argument, concluding that this type of clause did not "limit 'covered employees' to those supplied by the union. Rather, these provisions establish the employer's *separate obligation* to hire employees through the union referral system unless that system does not supply workers in a timely manner." *Flores*, 519 F.3d at 1048 (emphasis added). The referral provisions of the agreement do not limit the scope of its contribution requirements to union members.

Finally, defendant asserts that language in the first paragraph of the CBA stating that the agreement was entered into between the Union "and the individual members thereof" and the employers somehow means the CBA does not apply to nonunion members [Doc. #97-1 at 1, ¶ A]. However, this paragraph simply identifies the signatory parties, not which individuals are covered by the fringe benefits provisions.

The court concludes that the CBA covers both union and non-union employees who performed work falling within the craft definition during its term and that contributions were

therefore owed as to Robert Bunch.[1]

As stated above, defendant also argues that, even if the CBA otherwise covered Bunch, it was modified by an oral agreement between the Union and defendant so as to exclude Bunch.  While language in the contract allows the Union and the defendant to modify the CBA, the argument is unavailing here.  The agreement at issue was entered into after the purported modification.

The "well-established general rule is that where the parties to a contract have deliberately put their engagement in writing, '. . . all parol evidence of *prior* or *contemporaneous* conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent.'"  <u>Roberts v. Wells Fargo AG Credit Corp.</u>, 990 F.2d 1169, 1171 (10th Cir. 1993) (quoting <u>Wilson v. Mid-Continent Cas. Co.</u>, 510 P.2d 274, 276 (Okla.1973)) (emphasis in original).  The undisputed facts show that the alleged oral agreement as to Bunch occurred in 2007.  The CBA became effective in June of  2008.  The referenced rule compels the conclusion that the later agreement superseded any prior oral agreements or modifications of a contract no longer in force.  The language of the Addendum cited by defendant reinforces this conclusion, as it allows for modifications "hereafter negotiated . . . and agreed upon," rather than those made prior to the controlling

---

[1]*This result is consistent with the conclusions of other courts in similar circumstances. The Ninth Circuit has held that "[w]hen a collective bargaining agreement defines covered employees by job classification, it generally covers 'all employees within those classifications, regardless of union membership.'"  Flores, 519 F.3d at 1047 (citations omitted).  Similarly, the Sixth Circuit has interpreted a "definition of employees by job classification to require coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership."  Kohn Beverage, 749 F.2d at 318 (citations omitted).*

contract [Doc. #97-1 at 26].  The alleged modification does not alter the conclusion that Bunch was covered by the agreement.

Finally, the equitable defenses relied on by defendant, while available, do not warrant judgment for it at this point.  Such equitable defenses appear to be available in circumstances such as are involved here.  Trs. of Wyo. Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co., Inc. of Wyo., 850 F.2d 613, 624 (10th Cir. 1988); Teamsters & Emp'rs Welfare Trust of Ill. v. Gorman Bros. Ready Mix, 283 F.3d 877, 883 (7th Cir. 2002). However, factual disputes preclude their application in the summary judgment context.

Conclusion

For the reasons stated, defendant's motion for summary judgment [Doc. #96] is **DENIED** and plaintiffs' motion for summary judgment [Doc. #97] is **GRANTED** to the extent of establishing liability for contributions for union employees identified in the 2010 audit, but otherwise **DENIED**.  If not sooner resolved by agreement of the parties—and given the amounts at issue and the circumstances, such agreement would seem to be in all parties' interests—the case remains set for jury trial on the court's **November** trial docket.

**IT IS SO ORDERED**.

Dated this 15th day of October, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE